UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| REBECCA RAMIREZ,<br><br>               Plaintiff,<br><br>   v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>               Defendant.<br>_____/ | No. C 12-4192 MEJ<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br><br>**Re: Docket No. 8** |

## INTRODUCTION

Plaintiff Rebecca Ramirez (Plaintiff) brings this action for breach of contract and breach of the implied covenant of good faith and fair dealing related to long term disability benefits coverage pursuant to an insurance policy issued by Defendant Aetna Life Insurance Company (Defendant). Now before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), in which Defendant argues that Plaintiff's claims are preempted by the Employment Retirement Income Security Act of 1974 (ERISA). Dkt. No. 8.  The Court finds this motion suitable for disposition without oral argument and VACATES the November 8, 2012 hearing. Civ. L.R. 7-1(b).  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court DENIES Defendant's motion for the reasons set forth below.

## BACKGROUND

Plaintiff was formerly employed as a Network Administrator for the Ninth Circuit Court of Appeals. Pl.'s Opp'n at 1, Dkt. No. 16.  While employed, she became a member of a trade association, the National Conference of Bankruptcy Clerks (NCBC). *Id.* NCBC is an employee

association formed in 1980 "to serve the professional needs of the position of Clerk of Court for the United States Bankruptcy Courts." Def.'s Req. for Jud. Notice (RJN), Ex. 1. Defendant issued long term disability coverage to the NCBC under plan number 0620356. Compl. ¶ 6, Dkt. No. 1. Plaintiff purchased coverage through Defendant on or before January 1, 2009. *Id.* ¶ 7.

In August 2009, Plaintiff suffered a compensable loss and submitted a long term disability claim for benefits. *Id.* ¶¶ 8, 9. Although Defendant initially approved Plaintiff's claim and paid benefits from November 22, 2009 through September 16, 2011, her benefits were terminated at some point thereafter. *Id.* ¶ 9; Lariviere Decl., Ex. 2, Dkt. No. 11. Plaintiff subsequently submitted a request for review of the termination, which states, "Pursuant to ERISA § 503, 29 U.S.C. § 1133, and the Department of Labor regulations issued thereunder, Rebecca Ramirez hereby requests review of the termination of her long-term disability . . . benefits under the group long-term disability plan . . . sponsored by the [NCBC] and insured by Aetna Life Insurance Co. . . . ." Lariviere Decl., Ex. 2.

By letter dated May 22, 2012, Defendant advised Plaintiff that it had determined that benefits were no longer payable as her claim was governed by ERISA. *Id.* ¶ 10; Lariviere Decl., Ex. 3. In the letter, Defendant explained, "If you disagree with our determination, you have the right to bring a civil action under section 502(a) of [ERISA]. Upon written request, you may ask for and receive copies of documents relevant to your request free of charge." Lariviere Decl., Ex. 3. Plaintiff's claim was subsequently denied on appeal. Pl.'s Opp'n at 1.

Plaintiff filed the present Complaint on August 9, 2012, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. No. 1. Plaintiff alleges that she has suffered contractual damages, including general damages in the sum of $1,000,000 and punitive damages in excess of $5,000,000. Compl. at 5-6.

Defendant filed the present Motion to Dismiss on October 3, 2012. Dkt. No. 8. Defendant argues that Plaintiff's Complaint fails to state any viable claim because her state law causes of action are preempted by ERISA and must therefore be dismissed pursuant to Rule 12(b)(6). Plaintiff filed an Opposition on October 17, 2012 (Dkt. No. 16) and Defendant filed a Reply on October 24, 2012 (Dkt. No. 19).

**DISCUSSION**

**A.     Request for Judicial Notice**

As a preliminary matter, Defendant has filed a Request for Judicial Notice as part of its Motion. Dkt. No. 12. In its request, Defendant asks that the Court take judicial notice of the following documents: (1) NCBC website page on NCBC's history; (2) NCBC's Form 5500 & Schedule A filed annually for 2009 and 2010; (3) Federal First website age on plan eligibility; (4) website homepage of the law firm Lewis, Feinberg, Lee, Renaker & Jackson, P.C.; (5) Department of Labor website describing Form 5500 filings; (6) Department of Labor Opinion 92-19A (Sept. 30, 1992); and (7) the court docket sheet in *Brown v. Metropolitan Life Ins. Co.*, 836 F.Supp.2d 501 (U.S.C.D. Ky. 2011). In the alternative, Defendant requests that the Court convert its Motion into a summary judgment motion pursuant to Rule 56 if it finds that any of the material evidence submitted may not be considered on a Rule 12(b)(6) motion. Def.'s Mot. at 1.

Plaintiff opposes Defendant's request and argues that Defendant's Motion should be treated as a summary judgment motion. Pl.'s Opp'n at 3.

Under Federal Rule of Evidence 201, the Court may judicially notice facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). On a motion to dismiss, the Court may consider materials incorporated into the complaint or matters of public record. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, it is not clear that all the documents relied upon by Defendant are subject to judicial notice. Accordingly, the Court shall consider the documents, but shall treat Defendant's Motion as a summary judgment motion under Rule 56. Fed. R. Civ. P. 12(d).

**B.     Legal Standard**

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. V.*

1  *Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden,
2  the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the
3  depositions, answers to interrogatories, and admissions on file, designate specific facts showing that
4  there is a genuine issue for trial." *Celotex Corp. V. Catrett,* 477 U.S. 317, 324 (1986) (internal
5  quotations and citations omitted). On summary judgment, courts are required to view the evidence in
6  the light most favorable too the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio*
7  *Corp.,* 475 U.S. 574, 587 (1986). If a reasonable jury could return a verdict in favor of the
8  nonmoving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
9  242, 248 (1986).

**C.   Analysis**

In its Motion, Defendant argues that ERISA preempts Plaintiff's state law claims because they relate to its determination under the NCBC plan that Plaintiff is not disabled or entitled to long term disability benefits. Def.'s Mot. at 6-7. Specifically, Defendant argues that the NCBC plan is an employee welfare benefit plan governed by ERISA because NCBC is an employee organization. *Id.* at 8.

In response, Plaintiff argues that Defendant cannot prove that the plan was established or maintained by an employer or employee organization. Pl.'s Opp'n at 4.

Section 514(a) of ERISA preempts "'any and all State laws insofar as they . . . relate to any employee benefit plan'" governed by ERISA. *Golden Gate Rest. Ass'n v. City and Cnty. of San Francisco*, 546 F.3d 639, 648 (9th Cir. 2008) (quoting 29 U.S.C. § 1144(a)).[1] To show that a state law cause of action is preempted, the defendant must establish that the plaintiff's claims are based on a plan that qualifies as an "employee welfare benefit plan" under ERISA. *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988).

An ERISA employee welfare benefit plan is defined as: "(1) a plan, fund or program (2)

---

[1] "ERISA governs two types of employee benefit plans: (1) 'pension' benefit plans and (2) 'welfare' benefit plans." *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1069 n. 5 (9th Cir. 2005) (citing 29 U.S.C. § 1002(1)-(2)). This case involves the latter type of plan.

4

established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries." *Moideen v. Gillespie*, 55 F.3d 1478, 1481 (9th Cir. 1995) (citing *Kanne*, 867 F.2d at 492). The plan must be one that is established or maintained by an employer, an employee organization, or both. 29 U.S.C. § 1002(1). An "employee organization" under ERISA means: "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan." 29 U.S.C. § 1002(4).

Here, Defendant contends that NCBC fits within the definition of an employee beneficiary association. Def.'s Mot. at 8. The Department of Labor (DOL) has employed four criteria to determine whether an employee organization constitutes an employee beneficiary association:

    (1)    membership in the association must be conditioned on employment status-for example, membership is limited to employees of a certain employer or union;

    (2)    the association has a formal organization, with officers, bylaws or other indications of formality;

    (3)    the association generally does not deal with employers; and

    (4)    the association is organized for the purpose of establishing a welfare or pension plan.

*Mandala v. Cal. Law Enforcement Ass'n*, 561 F.Supp.2d 1130, 1134 (C.D.Cal. 2008) (citing DOL ERISA Op. Letter 79–19A at 2 (Mar. 15, 1979).[2]

---

[2] Though DOL opinion letters are not binding, they are entitled to a high degree of deference. *See Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006); *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998). This Court has previously relied upon the 79-19A DOL opinion letter in determining whether an employee organization constitutes and employee beneficiary association. *Macias v. Cal. Law Enforcement Ass'n*, 2009 WL 1621303, at *3 (N.D.Cal. June 05, 2009).

The parties dispute the first element of the DOL test, which focuses on whether the association's members have a "commonality of interest" with respect to their employment. *See Mandala*, 561 F.Supp.2d. at 1133; *Macias*, 2009 WL 1621303, at *3. In particular, "the [DOL] has interpreted the term [employees' beneficiary association] . . . to mean an organization in which the members share a commonality of interest with respect to their employment relationships, e.g., employees of a single employer or members of one union." *Macias*, 2009 WL 1621303, at *3. (citations omitted). However, "mere employment or union membership" alone is insufficient. *Mandala*, 561 F.Supp.2d at 1135-36. Rather, the individuals who stand to benefit from the plan must be "tied by a common economic or representation interest unrelated to the provision of benefits." *Id.* (citing *Wisc. Educ. Ass'n Ins. Trust v. Iowa State Bd. of Pub. Instruction*, 804 F.2d 1059, 1063 (8th Cir. 1986)) (emphasis added).

In this case, Defendant argues that the NCBC was organized to benefit federal court employees, and that NCBC's bylaws limit eligibility for long term disability benefits to such employees. Def.'s Mot. at 12. Based on the 2007 Summary of Coverage provided by Defendant, coverage under the plan is available to any person who is a "regular active, benefited full-time and permanent employee of the Judicial Branch of the U.S. Government and a qualified member as defined in the By-Laws of the National Conference Bankruptcy Clerks or Federal Court Clerk Association." Bahlo Decl., Ex. 2, Dkt. No. 10. In addition, to be eligible for benefits under the plan, a person must be "scheduled to work on a regular basis at least 20 hours per week" and "working within the United States or assigned to work outside the United States." *Id.* Under these guidelines, it would appear that NCBC's plan members share the requisite commonality of interest for purposes of establishing the existence of an employee beneficiary association governed by ERISA.

In her opposition, however, Plaintiff argues that it is doubtful that the NCBC plan satisfies the commonality requirement because "membership of the NCBC is open to virtually anybody." Pl.'s Opp'n at 2. Specifically, Plaintiff directs the Court's attention to the NCBC's Bylaws. The 2006 Bylaws, which were provided by Defendant, establish different types of NCBC membership, including general members and adjunct members. Bahlo Decl., Ex. 3. General membership is "open

6

to any individual employed in the Clerk's Office of a United States Bankruptcy Court, on an active, permanent appointment, working at least 20 hours per week, who has made application for membership and who is current in paying the requisite membership dues." *Id.* Adjunct membership is "open to any individual employed in the federal judicial branch on a permanent appointment, including job sharing positions. Such persons shall be eligible for a nonvoting adjunct membership." *Id.* Under Section 13 of the 2006 Bylaws, all persons holding a general membership or an adjunct membership are eligible to participate in the voluntary benefit plans available through the organization. *Id.*

Although Plaintiff agrees that the 2006 Bylaws limit plan membership to employees within the federal court system, she argues that subsequent Bylaws redefine adjunct membership to include federal, state, and local court employees. Pl.'s Opp'n at 2-3. A review of the 2008 Bylaws, provided by Plaintiff, shows that the definition of adjunct membership was changed to include "any court employee employed in a federal, state or local court system." Chandler Decl., Ex. E, Dkt. No. 17. Under Section 13 of the 2008 Bylaws, all persons holding a general membership or an adjunct membership are eligible to participate in the voluntary benefit plans available through the organization. *Id.* Thus, because it appears that federal, state, and local court employees were eligible to participate in the benefit plan for at least some of the time, Plaintiff argues that the commonality requirement contained in the first prong is defeated. Pl.'s Mot. at 9.

It is evident from the plan documents that membership in the NCBC plan is not limited to employees of a single employer or members of one union, as is required for an employee beneficiary association. *See Macias*, 2009 WL 1621303, at *3. Rather, a qualifying participant may be employed by any number of federal, state, or local court entities in any number of job positions.

In a case similar to this one, the court in *Brown v. Metropolitan Life Ins. Co.* determined that the NCBC did not establish that its membership is sufficiently limited by employee status to qualify as an employee organization under ERISA. 836 F.Supp.2d 501, 504 (W.D. Ky. 2011). In reaching this conclusion, the court looked to the NCBC's membership categories, including general and adjunct membership, and found that even though the NCBC limits its membership to a category of

employees, "it also undeniably offers membership of some type to any and all individuals, irregardless of their employee status." *Id.* Here, Defendant argues that *Brown* is incorrect because "the Bylaws are not listed in the exhibits submitted to the *Brown* court, so it appears the *Brown* court did not have the NCBC Bylaws before it. . . . Thus, the *Brown* decision was reached in the absence of critical, dispositive evidence." Def.'s Mot. at 11 n.3. However, as discussed above, the parties have provided the NCBC's Bylaws in this case. Although Defendant provided the 2006 Bylaws, which limit membership to federal court employees, subsequent versions of the Bylaws include any court employee employed in a federal, state or local court system. Thus, the Court has the benefit of the NCBC Bylaws before it, and Defendant's argument is without merit.

Based on this analysis, the Court concludes that Defendant has failed to meets its burden of establishing as a matter of law that Plaintiff's claims are preempted by ERISA. At the same time, the Court makes no finding at this point in the litigation that Plaintiff's claims are not preempted by ERISA. Viewing the evidence in the light most favorable to Plaintiff, there is at least a genuine dispute of material fact on this issue. Defendant may move for the same relief after the parties have had an opportunity to conduct discovery. Accordingly, the Court finds it appropriate to let the case proceed.

## CONCLUSION

Based on the analysis above, the Court DENIES Defendant's motion.

**IT IS SO ORDERED.**

Dated: October 25, 2012

Maria-Elena James
Chief United States Magistrate Judge

8